Art FLEAK, Jr., Plaintiff,

and

Bill Hendrix, Plaintiff-Intervenor,

v.

Elaine ALLMAN, Individually and in the capacity as Chairman, State Election Board of Oklahoma, et al., Defendants.

No. CIV–76–0573–E.

United States District Court,
W. D. Oklahoma.

Sept. 27, 1976.

Charles Whitman, Tulsa, Okl., for plaintiff Fleak.

David C. Hood, of Jernigan, Groves, Bleakley & Hood, Oklahoma City, Okl., for plaintiff-intervenor Hendrix.

Larry Derryberry, Atty. Gen. of Oklahoma, and Jo Angela Ables and Michael Cau-

thron, Asst. Attys. Gen., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION AND ORDER

Before HOLLOWAY, Circuit Judge, DAUGHERTY, Chief Judge, and EUBANKS, District Judge.

### PER CURIAM.

This is an action for declaratory judgment and for injunctive relief brought pursuant to 28 U.S.C. §§ 2201 and 2202 to declare and to define the rights and legal relations of the parties and to secure plaintiff's and intervenor's[1] rights, privileges and immunities under the Constitution of the United States. The action also is brought pursuant to 42 U.S.C. §§ 1981 and 1982 and 28 U.S.C. §§ 1343(3) and 1343(4). The plaintiff requested that a specially constituted three-judge district court be convened to hear the case. A three-judge district court was constituted by Oliver Seth, Acting Chief Judge, United States Court of Appeals, Tenth Circuit, on July 21, 1976.

The parties agreed to expedite this matter by submitting the case on a stipulation of facts, waiving argument and accelerating the briefing schedule. By Order of August 2, 1976, the complaints of plaintiff Fleak and intervenor Hendrix were dismissed. In pertinent part, that Order read:

"14 O.S.Supp.1975 § 108[2] is valid and not violative of the Equal Protection Clause of the Fourteenth Amendment. On close scrutiny we feel its requirement of having been a qualified registered elector for six months in the legislative district preceding the filing period is reasonably necessary to the accomplishment of legitimate state objectives.

"The statute assures the accomplishment of an affirmative, objective step on the official records a reasonable time prior to seeking office, showing objectively an intent to participate in public affairs in the new district of residence of a candidate."

This Memorandum Opinion and Order is a development of those expressed reasons.

### Findings of Fact

As to plaintiff Fleak, the parties have agreed and stipulated to the following pertinent facts:

1. That since May 30, 1975, plaintiff has continuously resided at 3626 S. Sandusky, Tulsa, Oklahoma, which is and has been for more than one year within State House District 76.

2. That on June 30, 1976, plaintiff changed his registration as a qualified registered elector from House District 78 to House District 76.

3. That Fleak filed his Notification and Declaration of Candidacy in the Office of the State Election Board of Oklahoma for the office of State Representative for District 76, and that Jerry L. Smith, a candidate for the said office, filed a Petition of Protest, questioning and objecting to Fleak's candidacy on the ground of disqualification under 14 O.S. § 108.

4. That after hearing held July 15, 1976, the State Election Board found in favor of the Protestant Smith and against the plaintiff Fleak, disqualifying Fleak as a candidate and ordering that his name not be placed on the ballot for the forthcoming August 24, 1976, primary election.

As to intervenor Hendrix, the court finds the following to be pertinent facts:

1. That since on or before December 31, 1975, intervenor has resided in a house located in State House District 85.

2. That on February 6, 1976, intervenor changed his registration as a qualified reg-

---

1. Plaintiff Art Fleak filed suit July 16, 1976. By Order dated July 28, 1976, applicants Bill Hendrix and Bill Nigh were granted leave to intervene. By Order dated August 2, 1976, the motion of intervenor Nigh to dismiss the complaint as to him without prejudice was granted.

2. Section 108 provides that "to file as a candidate for the House of Representatives in any representative district, one must have been a qualified registered elector in such district for at least six (6) months immediately preceding the filing period prescribed by law."

istered elector from another district to House District 85.

3. That Hendrix filed his Notification and Declaration of Candidacy in the Office of the State Election Board of Oklahoma for the office of State Representative for District 85, and that George Camp, a candidate for the said office, filed a Petition of Protest, questioning and objecting to Hendrix' candidacy on the ground of disqualification under 14 O.S. § 108.

4. That after hearing held July 14, 1976, the State Election Board found in favor of the Protestant Camp and against the intervenor Hendrix, disqualifying Hendrix as a candidate and ordering that his name not be placed on the ballot for the forthcoming November 2, 1976, general election.

5. That Hendrix applied to the Supreme Court of the State of Oklahoma, praying that Court to assume original jurisdiction and issue writ of mandamus requiring the State Election Board to place his name on the ballot as a candidate for nomination to the office of State Representative. That on August 19, 1976, that Court granted the application to assume original jurisdiction, but declined to issue a writ of mandamus, holding in pertinent part that § 108 does not impermissibly enlarge the qualifications set out in the State's Constitution,[3] for the reason that Article 5 § 17 deals only with the qualifications of members of the House, whereas § 108 deals with the qualifications of candidates for that office. *Hendrix v. State*, 47 OBAJ 1819 (August 19, 1976), citing *Johnson v. State Election Board*, 370 P.2d 551 (Okla.1962).

*Issue Before the Court*

Whether the requirement of durational and locational registration deprives plain-

tiff and intervenor of the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States is the sole issue presented here.

*Conclusions of Law*

"To decide whether a law violates the Equal Protection Clause, we look, in essence, to three things: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Dunn v. Blumstein*, 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

■ The character of the classification is differentiation between those electors who may offer themselves as candidates for the given office and those who may not on the basis of durational registration in the district. The individual interest involved is the interest in participating in the political process[4] and it is affected by imposition of a disability upon an elector to participate in a representative capacity in a district in which he has not been registered for six months.

■ Because the classification impacts upon the political process, the governmental interests asserted in support of the requirement must be "closely scrutinized" and must be found "reasonably necessary to the accomplishment of legitimate state objectives." *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

Before examining the particular interests asserted in support of this requirement, it is worthwhile, to gain perspective, to review the general interest which a people has in

---

**3.** Section 17 provides that members of the House of Representatives shall be "qualified electors" in their respective districts.

**4.** The court is of the opinion that no individual interest in interstate travel is involved herein. "[O]ne does not travel from one place to another contemplating that he will offer himself to the voters for election to state office." Doyle

(specifically concurring), *Draper v. Phelps*, 351 F.Supp. 677, 686 (W.D.Okla.1972).

Especially is that so where, as here, the durational requirement is not long term. On this basis the court distinguishes the case relied upon in plaintiff's brief, *Henderson v. Fort Worth Independent Sch. Dist.*, 526 F.2d 286 (5th Cir. 1976) (involving a durational requirement of three years).

differentiating between the qualified voter and the qualified candidate.

" . . . [A voter's] qualifications are minimal, and he need subject himself to the scrutiny of no one in the performance of his role in selection of public officers. . . . The candidate is one of a much narrower group. . . . He must have the special capacities that will enable him to perform the office he seeks, and his possession or lack of possession of those capacities need to be exposed to those who will make the choice." *Draper v. Phelps*, 351 F.Supp. 677, 683 (W.D. Okla.1972), quoting *Hadnott v. Amos*, 320 F.Supp. 107, 121–122 (Ala.1970), affirmed without opinion, 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971).

Does the requirement of registration serve justifiably to delineate those "special capacities" of the qualified candidate?

■ The State does have a compelling interest "in preventing frivolous and fraudulent candidacy" by disqualifying the "carpet bagger." *Draper, supra* at 683. Registration is an objective manifestation of the otherwise undocumented fact of residency. In this fluid, mobile society, the maintaining of, and periodic purging of, registration lists thus serves a purpose and is not administrative red tape of remote benefit to the State. Furthermore, a six-month registration establishes the fact of the required length of residency. The requirement of registration under oath also serves to disqualify the underage, and the convicted felon.

■ The State has a compelling interest, too, "in requiring that those who expect to stand for the office of state representative take the matter seriously and make plans for their candidacy in advance of the election date." *Draper, supra* at 683. The fact

of having registered in the district is an indicium of such foresight. If a would-be candidate from the district in which he resides retains his registration in the district from which he has moved, he by such action (or inaction) suggests that he is concerned with and chooses to cast his vote on the issues arising in his former community, rather than the community which he seeks to represent. Registration is thus not only indicative of the seriousness of his candidacy, but also of his willingness to accept the new community as his home and involve himself meaningfully in its affairs.[5]

■ For the reasons above stated the court finds that 14 O.S. § 108, which requires that "in order to file as a candidate for the House of Representatives in any of the representative districts, the candidate must have been a qualified registered elector in such district for at least six (6) months immediately preceding the filing period prescribed by law," is a valid statutory enactment of the Legislature of Oklahoma and complies fully with the Equal Protection of the Law clause of the Fourteenth Amendment of the Constitution of the United States.

Accordingly, the relief sought by plaintiff herein is in all things denied.

Counsel for defendant will prepare an appropriate judgment.

---

5. The parties have stipulated that at the hearing before the State Election Board, plaintiff

Fleak testified that in the last election he voted in his old precinct in House District 78.