Lynn CRUSSEL, a/k/a Dana Lynn Crussel, Plaintiff,

v.

The OKLAHOMA STATE ELECTION BOARD: Grace Hudlin, Chairman of the Okla. State Election Bd.; Drew Neville, Vice–Chairman of the Okla. State Election Bd.; and Lee Slater, Secretary of the Okla. State Election Bd., Defendants.

No. CIV–80–1090–W.

United States District Court, W. D. Oklahoma.

Oct. 8, 1980.

James C. Linger, Tulsa, Okl., for plaintiff.

Jan Eric Cartwright, Atty. Gen. of Okl., Brent S. Haynie, Asst. Atty. Gen. of Okl., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

LEE R. WEST, District Judge.

Plaintiff brought action for a writ of mandamus against the State Election Board of the State of Oklahoma and its members, such writ to compel the Board to reinstate the Plaintiff's name upon the ballot for the Oklahoma General Election, Oklahoma State Senate District No. 35, as a candidate of the Libertarian Party of Oklahoma. Plaintiff alleged as grounds for relief that Title 14, Okla. Statutes, §§ 80 and 108, as applied to Plaintiff, is unconstitutional in that it violates the First and Fourteenth Amendments of the U.S. Constitution, and Title 42, U.S.C. § 1983. Plaintiff also sought monetary damages in the amount of Four Hundred Fifty Dollars ($450.00).

The present action arose as a result of an administrative order of the Defendant State Election Board on July 15, 1980, striking the candidacy of Plaintiff from the ballot for election to the office of State Senator, District No. 35. The order of the State Election Board being final, Plaintiff petitioned the Oklahoma Supreme Court for a writ of mandamus ordering the Board to include her name on the ballot. The matter was briefed and argued before the court, en banc, on August 19, 1980. The Oklahoma Supreme Court issued a written order declining original jurisdiction over the matter (Case No. 55,630). Plaintiff then sought relief in the U.S. District Court for the Northern District of Oklahoma. That Court found venue to be improper in the District and ordered the case transferred to this Court on September 19, 1980.

A hearing on a Motion for Summary Judgment was held before this Court on September 25, 1980. That motion was denied by the Court. The parties agreed to expedite the matter by submitting the case on a stipulation of the facts, waiving further argument and submitting additional briefs and replies thereto.

The Court makes the following findings of fact and conclusions of law.

### I. Findings of Fact

The facts of this case are not in dispute. The Libertarian Party became a political party recognized under the laws of the State of Oklahoma on June 13, 1980. On June 16, 1980, Plaintiff executed a voter registration form wherein she designated the Libertarian Party as her party affiliation. Prior to that transaction, Plaintiff was registered as an "Independent" voter which in Oklahoma, has the effect of no party registration. The filing period for elective office commenced on July 7, 1980, and terminated on July 9, 1980. On July 9, 1980, Plaintiff filed her declaration of candidacy with the State Election Board seeking nomination of the Libertarian Party for election to the office of State Senator, District No. 35.

On July 11, 1980, Warren Green, the incumbent candidate for the office, filed a contest of Plaintiff's candidacy for the reason that she had not been a registered

member of the Libertarian Party for the six months immediately preceding the filing period. Title 14, O.S.Supp.1973, § 80, provides that a candidate seeking the nomination of a political party for the office of State Senator must have been a registered member of that party for the six months immediately preceding the filing period prescribed by law. Title 14, O.S.Supp.1973, § 108, provides the same requirement for the office of State Representative and Title 19, O.S.Supp.1973, § 131.1 provides the same requirement for any county office.

On July 15, 1980, the State Election Board conducted a hearing on the matter and as a result of the hearing, the State Election Board entered an order striking the candidacy of Plaintiff.

There is no six–month party registration requirement imposed upon candidates for the offices of Governor, Lieutenant Governor, Attorney General, State Auditor and Inspector, State Treasurer, Corporation Commissioner, President of the United States, U.S. Senator, or U.S. Representative. These latter candidates are subject to the registration requirement found in 26 O.S.Supp.1974, § 5–105, which provides only that a candidate must be a registered voter of a party from which he seeks nomination. The Libertarian Party will have candidates included on the ballot for some of these latter enumerated offices as well as for state legislative and county offices wherein the Libertarian candidates were not challenged before the State Election Board.

Prior to recognition of the Libertarian Party in Oklahoma on June 13, 1980, the party required its members to be registered as independents; and after June 13, 1980, the party required its members to register officially as Libertarians. The Libertarian Party of Oklahoma will not allow members to continue their affiliation with the party if they should run for office in Oklahoma in the 1980 election as Independents, Republicans, or Democrats.

## II. *Conclusions of Law*

The Oklahoma State statutes challenged in this action involve the manner by which an individual may gain access to a position on the state ballot for election to state or county office. As such, the questions presented require no discussion of the state's basic authority to legislate in this area to promote good order (which authority is quite clear). Rather, the Plaintiff alleges that in this instance the State of Oklahoma has breached the limits that the U.S. Constitution places on its admittedly broad police power. Specifically, Plaintiff has alleged that the statutes impermissibly restrict the First Amendment right to political association and also violate the Fourteenth Amendment prohibition against unequal application of the law. The Plaintiff also seeks relief against the named individuals under the provisions of 42 U.S.C. § 1983.

Title 14, O.S.Supp.1973, § 80, requires that an individual desiring to run for State Senator, State Representative, or county office as a candidate of a particular political party must be a registered member of that party for six months immediately preceding the filing period for the election. This statute must be read in conjunction with 26 O.S.Supp.1976, § 4–112, which provides that a person may not register as a member of a party unless that party is recognized under Oklahoma law. The requirements for party recognition are not being challenged in this action. They are pertinent to this action, however, in that they provide that a party may be formed and recognized at any time except during the period between July 1 and November 15 of any even–numbered year. The combined effect of the two sections of the statutes is such that a person may register as a member of a party newly recognized within the six–month period prior to the filing period, and consequently, be unable to meet the six month registration requirement to run as a candidate of that political party for the offices of State Senator, State Representative, or county official.

In contrast, candidates for state executive offices need be registered as a member of the party whose nomination to office they seek only at the time of filing, except that such candidates are limited by 26 O.S. Supp.1979, § 4–119, which prohibits the

changing of political affiliation between July 1 and September 30 in any even–numbered year. In sum, a candidate for state executive office may register or change affiliation as late as July 1, whereas one seeking a state legislative or county office must have registered a change of affiliation by January 1 of the election year.

The Plaintiff has alleged three different rationales upon which this Court might issue the requested writ of mandamus: (1) That the legislature implied an exception to the six–month durational registration requirement when it enacted § 1–108 allowing new political parties to become recognized as late as June 30 of an election year; (2) That the six–month registration requirement impermissibly burdens the right of access to a position on the state ballot; and (3) That the six–month registration requirement constitutes a violation of the right to equal protection of the law in that it applies to county and legislative candidates but not executive candidates on the state ballot.

■ As regards the first argument, this Court declines to find an implied exception to the six–month durational registration requirement. Plaintiff has offered no real evidence of any legislative intent to make an exception. The statutes in question are not totally consistent, but neither are they patently inconsistent or contradictory. It is entirely possible that the legislature intended its Title 26, O.S.Supp.1974, § 1–108, rules on party registration to be subject to its previously enacted statutes applying the six–month rule to county and state legislative office candidates. The Court is unwilling to venture a guess in this regard and finds such implied exception unwarranted in fact or law and unnecessary to the resolution of this action.

Plaintiff's second argument is more substantial. The six–month party registration requirement does in fact place a restriction on access to the ballot. The decisional law does not establish as a matter of principle which standard of review (strict scrutiny, rational basis, or a middle standard) will be used to gauge a law that affects the right of access to the ballot. The Supreme Court

has never held that the right to vote or the right of reasonable ballot access arise from the First Amendment. The Supreme Court has stated, however, that those two rights are so intertwined and essential to the First Amendment right of political association as to require a statute significantly burdening the exercise of those rights to be justified by *"more than a mere showing of legitimate state interest."* (emphasis added). *Lubin v. Panish*, 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974); *Kusper v. Pontikes*, 414 U.S. 51, 58, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973); *Williams v. Rhodes*, 393 U.S. 23, 31, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968). *See also, Wright v. Mahan*, 478 F.Supp. 468, 473 (E.D.Va.1979).

In this case, the voters are denied the ability to vote for county and state legislative candidates of a party that is officially recognized by the State of Oklahoma. The fact that the party has sufficient support from the electorate to have gained state recognition indicates that there will be voters expecting to find candidates with the subject party affiliation. A frustration of that voter expectation and collateral limitation of voting options constitutes a heavy burden on the right to vote. *Lubin v. Panish*, 415 U.S. at 717, 94 S.Ct. at 1320; *Williams v. Rhodes*, 393 U.S. at 31, 89 S.Ct. at 10. The imposed limitation on the right of voters is of sufficient and direct impact as to invoke a standard of review more rigorous than the "rational basis" test. *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972).

■ The defendants have relied heavily upon cases which involved statutes aimed at preventing opportunistic "party swapping" and preserving the integrity of route to the ballot. *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); *Lippitt v. Cipollone*, 337 F.Supp. 1405 (N.D.Ohio 1971). While it is granted that those interests are legitimate and compelling state interests, this Court fails to see that those interests are served by the six–month party registration requirement as it is applied to the

Plaintiff.[1] The Plaintiff could not be accused of opportunistic party swapping nor could she be accused of having compromised the route to the ballot in Oklahoma. This Plaintiff merely moved from an unaffiliated status to affiliation with a new party. To the extent that the six–month rule prevents members of recognized parties from making opportunistic changes of affiliation, it does serve a compelling state interest. But the manner in which the law affects the Plaintiff here does not serve that state interest. The teachings of the Supreme Court access to ballot cases include that laws affecting such areas should be carefully constructed so as to avoid excluding persons from the ballot in a manner not consistent with the state interest which justifies the legislation. *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 185, 99 S.Ct. 983, 986, 59 L.Ed.2d 230 (1979); *Lubin v. Panish*, 415 U.S. at 716, 94 S.Ct. at 1320; *Bullock v. Carter*, 405 U.S. at 146, 92 S.Ct. at 857. Although these cases all involved measures more restrictive than those in the instant case, the principle that states should use the least restrictive means of pursuing legitimate interest is certainly valid in its application here. The state has failed to show that a compelling or otherwise legitimate state interest is served by preventing persons without party affiliation from joining recognized parties during the six–month period and then entering their nomination races. To the extent that the six–month rule has the above restrictive effect, it constitutes an unconstitutional burden on the right of political association and the related right to vote and right of reasonable access to the ballot.

As to the Plaintiff's third argument for relief, the Court will consider it in light of the Supreme Court decision in *Illinois Election Bd. v. Socialist Workers Party, supra* (hereafter *IEB*). In that case, the Illinois Election Code had the effect that an independent or new party candidate for city office in Chicago was required to collect substantially more signatures on a nominating petition than an independent or new party candidate for state office. The prospective candidates in that action argued that the equal protection clause was violated because of the difference in qualifications required of independent and new party candidates seeking statewide office and those independent and new party candidates seeking city office. *IEB*, 440 U.S. at 181, 99 S.Ct. at 989. The Court determined that the statute in question restricted access to the ballot and thereby burdened the fundamental right to political association and the right to vote. The Court then held that "when such vital individual rights are at stake, a state must establish that its classification is necessary to serve a compelling interest." *IEB*, 440 U.S. at 183, 99 S.Ct. at 991.

The Court recognized in *IEB* that the state had a legitimate interest in requiring that all candidates indicate that they had at least a modicum of support in order to avoid "laundry list" ballots and fraudulent or frivolous candidacies. The Court failed to find that there was a legitimate reason for making the requirements in that regard more demanding for city office candidates than those for state office candidates. Accordingly, the Court ruled the statute unconstitutional insofar as it required more of city office candidates than it did of candidates for statewide office. This holding was made on equal protection grounds.

■ In this case, the same vital and fundamental interests are involved as were in *IEB*. *See also, Fleak v. Allman*, 420 F.Supp. 822, 824 (W.D.Okl.1976); *Draper v. Phelps*, 351 F.Supp. at 681. Consequently, the state must establish that the classifications it uses are necessary to serve a com-

---

1. The only other state interest that the Defendant has advanced to support the six–month party registration requirement is that it helps to promote an informed electorate. While the Court notes that the promotion of an informed electorate is a substantial and legitimate state interest, the Defendant has failed to persuade the Court that this interest is even remotely enhanced by the six–month party registration requirement. The promotion of electorate knowledge of candidates is effectively served by the durational residency requirement as discussed in *Draper v. Phelps*, 351 F.Supp. 677 (W.D.Okl.1972).

pelling state interest. The classification in question is that between state legislative and county offices in contrast with state executive offices. The statutes reflect a determination by the legislature that those persons seeking state legislative and county offices must be affiliated with the party whose nomination they seek at least six months prior to the filing period. No such requirement is made of candidates for state executive office.

In supporting the above classification, the state has contended that county officials and legislative officers are in more direct contact with individuals and that their activities have a more direct and immediate impact on the local constituency. Further, the State contends that the legislative power is more insulated and absolute than the power of the executive offices. Therefore, the State argues that it is more important that county and state legislative offices be protected from candidates who may be "opportunistic party swappers" than it is to protect state executive offices from such persons. The state goes on to assert that statutory protection for county and legislative offices is more necessary than that for statewide office because campaigns for statewide elections tend to begin at an earlier time than those for county and legislative elections, and that the former tend to draw more attention from the print and broadcast media.

■ Under a rational basis analysis, the above reasons might arguably be sufficient to justify the distinction between state and executive and state legislative and county offices.[2] Following *IEB*, however, more than a rational basis is required to justify the classifications used in this area. This Court is not persuaded that the interest and reasons listed above are more than minimally reasonable bases and thus appear to be far short of compelling. It might be noted that the State has offered no decisional law

to support its contention that the above reasons and interests are sufficient to support the classifications used. This Court therefore holds that insofar as the Oklahoma statutes require a six–month party affiliation of candidates for state legislative and county office but not for state executive office, it is unconstitutional on the basis of the Fourteenth Amendment guarantee of equal protection of the laws. As in *IEB*, the State has failed to prove that greater protection of county and state legislative offices is warranted by an interest so substantial as to justify the intrusion into the areas of right to vote, right of reasonable access to the ballot, and the right of political association.

In conclusion, this Court has declined to find that the state statutes contain an implied exception for members of newly formed parties to the six–month affiliation requirement for county and legislative office candidates; this Court does hold the six–month affiliation requirement is overly broad in that it not only prevents candidates from improperly changing parties, but also prevents unaffiliated potential candidates from moving from an unaffiliated status to party affiliation during the six–month period prior to the filing period; and this Court holds that the application of the six–month rule to state legislative and county office candidates but not to state executive candidates is violative of the Fourteenth Amendment Equal Protection Clause.

### III. *Relief*

■ By Order of this Court, the defendant members of the Oklahoma State Election Board are hereby enjoined from removing the name of the Plaintiff from the November General Election Ballot and are enjoined from issuing same ballot without including the name of the Plaintiff as the candidate of the Libertarian Party of

---

**2.** The Court does recognize, as did the Supreme Court in *IEB*, 440 U.S. at 184, 99 S.Ct. at 990, that valid distinctions among some state offices and between some state and county offices could be made for other purposes such as setting durational residency requirements. See also, *Oklahoma State Election Board v. Coats*, 610 P.2d 776 (Okl.1980) (court upheld restriction preventing district attorney from running for office whose term would be at all concurrent with their present office).

Oklahoma for election as Oklahoma State Senator from State Senate District No. 35. Plaintiff's request for money damages is denied because any such damages would ultimately come from the treasury of the State of Oklahoma and to hold otherwise would be violative of the immunity conferred on states by the Eleventh Amendment to the United States Constitution. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiff is awarded, however, reasonable costs of this action, including attorney's fees under 42 U.S.C. § 1983 as against the state officials. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980).