510 A.2d 583

**Tommie BROADWATER, Jr.**

v.

**STATE of Maryland et al.**

**No. 132, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 1, 1986.

Eric S. Slatkin (Karl G. Feissher, John E. Beckman, Jr. and Feissner, Beckman & Slatkin, on brief), Langley Park, for appellant.

Ralph S. Tyler, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. and Andrew H. Baida, Asst. Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

We shall here hold constitutional as applied the provisions of Md. Const. art. I, § 12 providing that one entering upon the duties of an elective office created by or pursuant to the provisions of the Maryland Constitution must be a registered voter.[1] In an earlier trip of this controversy to this Court we remanded for a declaration of the rights of the parties. *Broadwater v. State*, 303 Md. 461, 494 A.2d 934 (1985).

Appellant, Tommie Broadwater, Jr., brought a declaratory judgment action in the Circuit Court for Anne Arundel County. His amended complaint averred that he is a former Senator from Prince George's County in the General Assembly of Maryland; that he "was indicted and found guilty of conspiracy, unauthorized acquisition of food stamps, aiding and abetting, etc., in the United States

---

1. Md. Const. art. I, § 12 provides in its entirety:
   "Except as otherwise specifically provided herein, a person is ineligible to enter upon the duties of, or to continue to serve in, an elective office created by or pursuant to the provisions of this Constitution if the person was not a registered voter in this State on the date of the person's election or appointment to that term or if, at any time thereafter and prior to completion of the term, the person ceases to be a registered voter."

District Court for the District of Maryland"; that he "has served the custodial time pronounced by the court and is presently on probation"; that he was obliged to give up his seat in the General Assembly; that he is anxious to place his name before the voters as a Senator from Prince George's County; and that present Const. art. I, § 12 makes one ineligible to run for office if said candidate is not a registered voter in the State on the date of the person's election or appointment to that office. The complaint further stated that Maryland Code (1957, 1983 Repl.Vol.) Art. 33, § 3–4(c) provides that no person shall be registered as a qualified voter if he has been convicted of theft or other infamous crime unless he has been pardoned, or in connection with his first said conviction only, he has completed any sentence imposed pursuant to that conviction, including any period of probation by virtue of parole or otherwise in lieu of a sentence or part of a sentence; and that prior to the November 1984 referendum by which Const. art. I, § 12 was adopted by the people he "had already submitted to the proper State Election Board a petition signed by approximately 7% (seven percent) of the electorate of his election district which is more than the 3% (three percent) of the electorate in a district acquired [sic] in order to be eligible to run as an independent." Broadwater claimed that Const. art. I, § 12 violates the First, Fifth and Fourteenth Amendments to the United States Constitution and Md. Declaration of Rights art. 24; that the proposed constitutional amendment "was drafted for the sole purpose of preventing this Plaintiff from presenting himself as a candidate to the electorate in his district"; and that Const. art. I, § 12 "should not be applied to the Plaintiff if he decides to run in the 1986 State Senate race for the 24th legislative district as the Plaintiff had already complied with all rules and regulations necessary to place his name in the 1986 ballot prior to the passage of said Constitution [sic] amendment." Accordingly, he sought a declaration "that Article 1, section 12 of the Maryland Constitution is unconstitutional as it violates the [equal] protection clause of the United States' Constitu-

tion, or alternatively, the [sic] Article 1, section 12 of the Maryland Constitution should not apply to the plaintiff if he elects to run as a State Senator in the 1986 election of the 24th legislative district."

The matter came on for hearing on cross-motions for summary judgment. The trial judge in his opinion said in part:

"Thus if Article I, § 12 disqualified only convicted felons from seeking office, it would clearly be constitutional. Or if Broadwater only had standing to challenge the constitutionality of section 12 as it applied to disqualified voters like himself, his suit would be clearly groundless. Section 12, however, makes all 'unregistered voters' ineligible for election to a constitutionally created office. It is on this basis, as a member of the class of unregistered voters, that Broadwater challenges the amendment."

Broadwater was found to have standing "to address the constitutionality of section 12 as it affects all unregistered voters." Applying a rational basis test, the court declared the section constitutional. It rejected as "without merit" the contention that the amendment in question was drafted for the sole purpose of preventing Broadwater from presenting himself as a candidate to the electorate in his district, pointing out that "the amendment applies equally to all citizens of this State, not just Tommie Broadwater." The court concluded that Broadwater "had not complied with the rules necessary to place his name on the 1986 ballot prior to the passage of the constitutional amendment" and said that "he has no vested interest in running for office under the laws as they existed in 1984." The trial court declared "that Tommie Broadwater is not entitled to become a candidate for any constitutionally created office in 1986 unless he complies with all the requirements imposed by the laws of this State in 1986 ...."

An appeal to the Court of Special Appeals followed. We granted a writ of certiorari prior to consideration of the case by the intermediate appellate court.

In this Court Broadwater's arguments are based entirely upon the equal protection clause of U.S. Const. amend. XIV.[2] We assume for the purpose of our decision in this case that Broadwater has standing to represent the class of all unregistered voters who are barred from elective office.

According to Broadwater approximately 40% of those in Prince George's County and 30% of the people in Maryland who are 18 years of age or older are not registered to vote and therefore are unable to run for office. Broadwater contends that this group by not being able to seek elective office is deprived of equal protection of the laws.

Last year in *Cleburne v. Cleburne Living Center*, 473 U.S. ——, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), Justice White declared for the Court:

"The Equal Protection Clause of . the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe*, 457 U.S. 202, 216 [, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786] (1982). Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised stan-

---

**2.** In the opening of his brief Broadwater makes a passing reference to Md. Declaration of Rights art. 24. It provides:

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

In *Attorney General v. Waldron*, 289 Md. 683, 704, 426 A.2d 929, 940–41 (1981), Judge Digges said for the Court, "Although the Maryland Constitution contains no express equal protection clause, we deem it settled that this concept of equal treatment is embodied in the due process requirement of Article 24 of the Declaration of Rights."

The constitutional section in question could not be invalid under the Declaration of Rights because if there were a conflict the specific provision in Const. art. I, § 12 would prevail. *Lodowski v. State*, 302 Md. 691, 706, 490 A.2d 1228, 1235 (1985), *vacated and remanded on other grounds*, —— U.S. ——, 106 S.Ct. 1452, 88 L.Ed.2d 41 (1986); *Anderson v. Baker*, 23 Md. 531, 627–28 (1865), and *Baltimore v. State*, 15 Md. 376, 459 (1860).

dards for determining the validity of state legislation or other official action that is challenged as denying equal protection. The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Schweiker v. Wilson,* 450 U.S. 221, 230 [, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186] (1981); *United States Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174–175 [, 101 S.Ct. 453, 459, 66 L.Ed.2d 368] (1980); *Vance v. Bradley,* 440 U.S. 93, 97 [, 99 S.Ct. 939, 943, 59 L.Ed.2d 171] (1979); *New Orleans v. Dukes,* 427 U.S. 297, 303 [, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511] (1976). When social or economic legislation is at issue, the Equal Protection Clause allows the states wide latitude, *United States Railroad Retirement Board v. Fritz, supra,* at 174, [101 S.Ct. at 459]; *New Orleans v. Dukes, supra,* at 303 [, 96 S.Ct. at 2516–17], and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

"The general rule gives way, however, when a statute classifies by race, alienage or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy—a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. *McLaughlin v. Florida,* 379 U.S. 184, 192 [, 85 S.Ct. 283, 288, 13 L.Ed.2d 222] (1964); *Graham v. Richardson,* 403 U.S. 365, [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971). Similar oversight by the courts is due when state laws impinge on personal rights protected by the Constitution. *Kramer v. Union Free School District No. 15,* 395 U.S. 621 [, 89 S.Ct. 1886, 23 L.Ed.2d 583] (1969); *Shapiro v. Thompson,* 394 U.S. 618 [, 89 S.Ct. 1322, 22 L.Ed.2d 600] (1969);

*Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 [, 62 S.Ct. 1110, 86 L.Ed. 1655] (1942)." 473 U.S. at —, 105 S.Ct. at 3254–55, 87 L.Ed.2d at 320.

The personal right found in *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), to be protected by the Constitution was the right to vote. The right protected in *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), was the right to travel. The rights to procreate and to marry were found to be protected in *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

■ Broadwater contends that strict scrutiny should be applied in this case. However, the classifications here do not pertain to race, alienage, national origin, or "personal rights protected by the Constitution," mentioned by the Court in *Cleburne* as areas for strict scrutiny.

Broadwater would like to equate the right of an unregistered voter to seek elective office with the right to vote. According to an affidavit of the Deputy Administrator of Election Laws filed in the trial court:

"In a period beginning January, 1984 and ending June, 1985, *243,685* individuals in the State of Maryland have been removed from the rolls of registered voters. *24,390* have been removed because of death, *87,491* because of their failure to maintain their status as a resident of the state, *104,688* because they have not voted at least once at a primary, general or special election within the five preceding calendar years, and *1,226* because they have been convicted of theft or other infamous crimes. Additionally, *25,890* have been removed for reasons including but not limited to cancellation upon voters' requests, failure to change address within the county of residence and registration at a business address." (Emphasis in original.)

Since by far the larger number removed from the voting lists was because of their failure to vote "at least once at a

primary, general or special election within the five preceding calendar years," one may suspect that the greatest reason for a failure to register is apathy. We note in that regard the ease with which one may register under current law. Const. art. I, § 1 provides that "[e]very citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which he resides at all elections to be held in this State." Code (1957, 1983 Repl. Vol.) Art. 33, § 3–4(b) provides that any resident of the State for thirty days preceding a general election shall be entitled to register. Art. 33, § 3–2 provides that in a county such as Prince George's, with a population of more than 50,000 registered voters, the office of the Board of Election Supervisors shall be open for registration "five days per week during the regular business hours for the county courthouse and the county business offices or at other times for the equivalent number of hours if the board shall determine that the greater convenience of the public is served." Art. 33, § 3–1(c) provides for registration by mail.[3]

---

**3.** This ease of registration is in sharp contrast with what existed not too long ago. Until the adoption by the people in 1970 of an amendment to Const. art. I, § 1 proposed by Ch. 784 of the Acts of 1969, those seeking to register were required to have been residents of the State for one year and of the Legislative District of Baltimore City or of the county in which he might offer to vote for six months next preceding the election. Many of those engaged in the field of practical politics will recall that except in the most populous areas the principal time of registration was the sitting of local boards of registry on the fifth Tuesday preceding any primary election and on the Tuesdays eight and seven weeks, respectively, preceding any general election. See Code (1957) Art. 33, § 29. The Maryland Declarations of Intention Act, most recently codified as Code (1939, 1947 Cum. Supp.) Art. 33, § 36 provided from its enactment by Ch. 133 of the Acts of 1902 until its repeal by Ch. 421 of the Acts of 1949 that no person "coming into this State from any other State, district or territory of the United States sh[ould] be entitled to registration as a voter in this State until one year after his intent to become a citizen and resident of this State sh[ould] be evidenced in one of two ways," referring to a declaration of intention to become a citizen and resi-

The Supreme Court in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), cited *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), for the proposition that challenges to specific provisions of a state's election laws cannot be resolved by any "litmus-paper test" that will separate valid from invalid restrictions. We believe on the facts of this case that it is readily distinguishable from ballot access cases such as *Anderson, Storer,* and *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). The plurality pointed out in *Clements v. Fashing,* 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508, 516 (1982), citing *Bullock,* 405 U.S. 134, 143, 92 S.Ct. 849, 856, "that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" Justice Rehnquist went on to say for the plurality that the Court has "departed from traditional equal protection analysis in recent years in two essentially separate, although similar, lines of ballot cases," referring to those involving "classifications based on wealth" and "schemes that impose burdens on new or small political parties or independent candidates." A convicted felon such as Broadwater may constitutionally be denied the right to vote. *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974). Given the ease of registration in Maryland we do not believe that the great mass of unregistered voters in Maryland meet these criteria. Hence, we find that the case does not require strict scrutiny.

■ The Court went on in *Cleburne* to speak of a "heightened standard of review," such as was mentioned by this Court in *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 641, 458 A.2d 758, 781–82 (1983), and *Attorney General v. Waldron,* 289 Md. 683, 711, 426 A.2d 929, 944–45 (1981). In *Cleburne* the Court listed gender and

---

dent of the State at the office of "the clerk of the Circuit Court for the said county or of the Superior Court of Baltimore City, as the case m[ight] be" or the making of such declaration before the Board of Registry.

illegitimacy as calling for a heightened standard of review. Chief Judge Murphy summarized heightened scrutiny for this Court in *Hornbeck:*

" 'Heightened scrutiny' of a legislative classification is a less exacting standard of review and is applied when a statute impacts upon 'sensitive,' although not necessarily suspect criteria of classification (*i.e.,* gender discrimination), or where a statute affects 'important' personal rights or works a 'significant' interference with liberty or a denial of a benefit vital to the individual. *Waldron, supra,* 289 Md. at 711." 295 Md. at 641–42, 458 A.2d at 781–82.

The right of an unregistered voter to seek elective office is unconnected with gender or illegitimacy and does not appear to be an important personal right or work a significant interference with liberty or a denial of a benefit vital to the individual, particularly when one notes the ease of registration. Therefore, as put in *Cleburne,* "The Equal Protection Clause requires only a rational basis to serve a legitimate end." Accordingly, if any state of facts reasonably can be conceived that would sustain the constitutionality of the statute, the existence of that state of facts as a basis for passage of the law must be assumed. *State v. Wyand,* 304 Md. 721, 727–28, 501 A.2d 43, 46–47 (1985), quoting *Supermarkets Gen. Corp. v. State,* 286 Md. 611, 616–17, 409 A.2d 250, 253 (1979), and *Edgewood Nursing Home v. Maxwell,* 282 Md. 422, 427, 384 A.2d 748, 751 (1978).

The trial judge indicated as to a rational basis for the amendment:

"Registration manifests the fact of residency; it is indicative of the candidate's seriousness and 'his willingness to accept the new community as his home and involve himself meaningfully in its affairs.' *Fleak v. Allman,* 420 F.Supp. 822, 825 (W.D.Okla.1976).... These are legitimate state interests. Registration also protects against fraudulent voters and candidates, ensuring that the underage and convicted felons are disqualified from seeking office. These too are legitimate interests."

The court also observed in *Fleak* that "[r]egistration is an objective manifestation of the otherwise undocumented fact of residency." *Id.* 420 F.Supp. at 825.

■ As the State suggests, "[I]t would be anomalous for those who make and enforce the laws to be validly prohibited from voting, and it would be little better for those who make and enforce the laws by which all of us must live to have so little interest in public affairs as not to be registered." In *Shenton v. Abbott,* 178 Md. 526, 15 A.2d 906 (1940), Judge Delaplaine said for the Court:

"The Constitution of Maryland prescribes that a qualified voter shall be entitled to vote at elections held in this state 'in the ward or election district in which he resides.' Md. Const. art. 1, sec. 1. The object of the framers of the Constitution, in prescribing residence as a qualification for the exercise of the elective franchise, was not only to identify the voters and to prevent fraud, but also to assure that each voter would become in fact a member of his community and take an interest in its government." 178 Md. at 531, 15 A.2d at 908.

It must not be forgotten that this provision is not a legislative enactment but a provision of the Constitution of Maryland adopted by the voters of this State. We agree with the State when it says, "It is not unreasonable for the voters of this State to decide that those who seek to govern should be both eligible to register to vote, and, in fact, registered." As we observed in *Broadwater,* 303 Md. at 463, 494 A.2d at 935, "Prior to [the adoption of the constitutional amendment here in controversy] Maryland law required candidates for nomination at a party primary to be registered voters. However, persons seeking by petition to appear upon the ballot as candidates were not required to be registered voters." This amendment makes uniform a requirement that those holding elective office be registered voters. We find no constitutional infirmity as applied.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.