563 A.2d 420

**STATE of Maryland et al.**

v.

**Tommie BROADWATER, Jr.**

**No. 135, Sept. Term, 1988.**

Court of Appeals of Maryland.

Sept. 13, 1989.

Andrew H. Baida, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, Ronald Willoner, College Park, for petitioners/cross-respondents.

Byron L. Warnken, Baltimore, Karl G. Feissner (Feissner & Slatkin, both on brief), Burtonsville, for respondent/cross petitioner.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals, retired, Specially Assigned.

RODOWSKY, Judge.

Md.Code (1957, 1986 Repl.Vol.), Art. 33, Title, "Election Code," § 3–4(c) provides:

"No person shall be registered as a qualified voter if he has been convicted of theft or other infamous crime, unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence

imposed pursuant to that conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence." [1]

At issue here is how § 3–4(c) applies where there were guilty verdicts and sentences on multiple counts charging infamous crimes in a single indictment against a person never previously convicted of an infamous crime.

Appellants are the State of Maryland and the Board of Supervisors of Elections for Prince George's County (Board), collectively, the State. The State, approaching the statute's construction from a technical, double jeopardy standpoint, contends that each separate guilty finding on a count charging an infamous crime for which a separate sentence could be imposed is a "conviction" for purposes of § 3–4(c). Appellee, Tommie Broadwater, Jr. (Broadwater), emphasizing rehabilitation of first time offenders as the legislative purpose, contends that the criminal proceeding in which there is adjudication of guilt and sentencing is the "conviction" for purposes of § 3–4(c). Based primarily on

---

1. Code Art. 33, § 3–4 in its entirety reads:

"(a) *Qualified voters.*—Only persons, constitutionally qualified to vote in the precinct or district, as the case may be, shall be registered as qualified voters.

(b) *Constitutional qualifications.*—The qualifications of voters are the following; each one of which is applicable to every voter:

(1) Citizen of United States;

(2) Age of eighteen years or older;

(3) Resident of State for thirty days preceding general election;

(4) Resident of county or legislative district of Baltimore City, in which he may offer to vote, as of the time for closing of registration, next preceding the election;

(5) Not constitutionally regulated or prohibited by subsection (c) or subsection (d) of this section;

(6) Not convicted of buying or selling votes.

(c) *Conviction of crime.*—No person shall be registered as a qualified voter if he has been convicted of theft or other infamous crime, unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence imposed pursuant to that conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence.

(d) *Persons under guardianship.*—No person shall be registered as a qualified voter if he is under guardianship for mental disability."

the legislative history of the section and on the social history immediately surrounding its enactment, we hold that Broadwater's construction is correct.

The federal grand jury for the District of Maryland in April 1983 charged Broadwater jointly with one or more other co-conspirators in five counts of a six count indictment. Count I alleged that the conspiracy operated from January 1983 until March 6, 1983, that co-defendants would illegally acquire United States food stamp coupons, paying approximately forty percent of their face value, that the stamps would be delivered to Broadwater who paid approximately sixty percent of the face value, and that Broadwater would cause the coupons to be processed through certain businesses, wholly or partially owned by him, for redemption by the United States and the Department of Agriculture at face value. Overt acts alleged in furtherance of the conspiracy were illegal transfers of specified face value amounts of food stamps to Broadwater on specified occasions, namely, $10,000 in face value of stamps on January 21, $15,035 on February 1, $20,000 on February 20, and $25,000 on March 6. Counts II through V of the indictment alleged that Broadwater, as to each overt act, unlawfully acquired, possessed and used food stamp coupons in a manner not authorized under the laws of the United States in violation of 7 U.S.C. § 2024(b) (1982). A jury found Broadwater guilty on each of the five counts against him.

The court in October 1983 imposed split, concurrent sentences on each of the five counts, *i.e.*, six months confinement, two and one-half years imprisonment suspended, and four years probation, with fines of $10,000 on each of Counts I and II. The court further ordered restitution of $18,420 and 1,000 hours of community service.[2]

---

**2.** The docket entry of the federal court's judgment as to Broadwater reads:

"JUDGMENT AS TO DEF. T. BROADWATER: The defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of three (3) years as to each of Count Nos. 1, 2, 3, 4, and 5, and fined the

As a result of the outcome of the federal prosecution Broadwater's name was stricken from the registry of qualified voters in Prince George's County, Maryland. Broadwater had previously been a member of the Maryland Senate, elected from a district within that county. After Broadwater had served his period of confinement and while he was on probation, he unsuccessfully challenged under the Equal Protection Clause of the Federal Constitution, Maryland Constitution art. 1, § 12 under which registration as a voter is a condition of initial and continued eligibility for seeking or holding elective office, as therein more particularly set forth. *Broadwater v. State,* 306 Md. 597, 510 A.2d 583 (1986); *Broadwater v. State,* 303 Md. 461, 494 A.2d 934 (1985).

After having fully completed his period of probation, Broadwater attempted to register again as a voter in Prince George's County. The Board refused his application because of his "CONVICTION OF DISQUALIFYING CRIMES." Broadwater then filed a complaint against the Board in the Circuit Court for Prince George's County. The Attorney General's Office joined with counsel for the Board

---

sum of Ten Thousand Dollars ($10,000.00) as to Counts No. 1 and 2, and on condition that the defendant be committed and confined in an appropriate institution for a period of six (6) months. Said period of imprisonment to run concurrently with each other, making a total period of three (3) years imprisonment and a total of six (6) months confinement. Said fine is to be cumulative as to each of Counts Nos. 1 and 2, making a total fine of Twenty Thousand Dollars ($20,000.00).

"IT IS FURTHER ORDERED that the execution of the remainder of the sentence of imprisonment only is hereby suspended and defendant placed on probation for a period of four (4) years as to each of Counts No. 1, 2, 3, 4, and 5, to commence upon the defendant's release from confinement upon the following terms and conditions: (1) That defendant comply with all local, state, and federal laws; (2) that defendant comply with the rules and regulations of the Probation Office; (3) that restitution in the amount of Eighteen Thousand Four Hundred and Twenty Dollars ($18,420.00) to be paid to the U.S. Department of Agriculture; (4) that defendant complete One Thousand (1,000) hours of community service at such times and in such manner as is prescribed by the Probation Office."

in defense of the action by having the State of Maryland intervene as a defendant. The circuit court ordered the Board to reinstate Broadwater as a registered voter and this appeal was noted. We granted appellants' petition for certiorari prior to consideration of the matter by the Court of Special Appeals.

The ultimate dispute is whether § 3–4(c) should be read on a micro scale, as the State contends, or on a macro scale, as Broadwater contends. From the textual standpoint, the State argues that for purposes of assessing guilt and, ultimately, of imposing sentence on conviction "each count of an indictment is regarded as if it were a separate indictment and the jury is required to determine whether to make a finding of guilt on each count...." *Mack v. State,* 300 Md. 583, 595, 479 A.2d 1344, 1349 (1984). Broadwater points out that conviction has also been said to mean "that legal proceeding which ascertains the guilt of the party...." *State v. Brantley,* 1 Ohio St.2d 139, 141, 205 N.E.2d 391, 393 (1965), and that "convicted" has been said to "involve[ ] all the necessary proceedings from the charge to the sentence inclusive." *Smith v. State,* 75 Fla. 468, 473, 78 So. 530, 532 (1918). Not surprisingly, this Court has said that "[i]n today's usage, however, the meaning of 'convicted' and 'conviction' turns upon the context and purpose with which those terms are used." *Myers v. State,* 303 Md. 639, 642, 496 A.2d 312, 313 (1985).

The parties also find support for their respective positions in the history of § 3–4(c). Prior to the general election of November 7, 1972, Maryland Constitution art. 1, § 2 had provided in part that "[n]o person above the age of twenty-one years, convicted of larceny, or other infamous crime, unless pardoned by the Governor, shall ever thereafter be entitled to vote at any election in this State[.]" The provision first appeared in the Constitution of 1851. See Constitutional Convention Commission of Maryland, *Constitutional Revision Study Documents* at 642–43 (1968). The proposed constitution which was rejected in 1968 would have authorized the General Assembly to prescribe by law

disqualifications from voting by reason of conviction of serious crime. *See* Constitutional Commission of Maryland, *Comparison of Constitutions,* § 2.06 (1968). The substance of that proposal was separately presented to the voters by a constitutional amendment proposed by Ch. 368 of the Acts of 1972 and ratified that year. 1973–1974 Maryland Manual at 575. Chapter 368 amended Md. Const. art. 1, former § 2 to read in relevant part:

"The General Assembly by law may regulate or prohibit the right to vote of a person convicted of infamous or other serious crime...."

The provision is now Md. Const. art. 1, § 4. Md.Code, Art. 33, § 3–4(c) implements the constitutional authorization.

Pointing to the long-standing constitutional requirement for lifetime disfranchisement (in the absence of gubernatorial pardon), the State views § 3–4(c)'s legislative implementation of the constitutional change as a careful modification by which "the General Assembly plainly contemplated a narrow and grudging relinquishment of its unqualified power to deny the right to vote to all convicted felons." Brief for Appellants at 13. Broadwater sees the constitutional amendment and the enactment of § 3–4(c) as part of a broad, national trend favoring rehabilitation and opposing lifetime disfranchisement of felons. He reads "in connection with his first such conviction only" to distinguish between first time offenders and repeat offenders so that the premise underlying § 3–4(c) is assumed rehabilitation after confinement and completion, without violation of condition, of any period of probation.

Close review of the available legislative history supports Broadwater's analysis. At the 1972 legislative session then Senator J. Joseph Curran, Jr. introduced Senate Bill 239 which, conditioned on adoption of the amendment to Md. Const. art. 1, § 2, would have amended § 3–4(b) of the Election Code to list as a qualification that the voter was "[n]ot twice convicted of an infamous crime, unless pardoned by the Governor." *See* 1972 Md. Laws 1722–24; *see also* 1972 Maryland Senate Journal at 141. Amendments to

the bill were proposed in committee.[3]   One committee proposal changed subsection (b) and added subsection (c) providing that "[n]o person shall be registered as a qualified voter if he has been twice convicted of an infamous crime, unless pardoned by the Governor." 1972 Md. Sen. J. at 595. An amendment was offered from the floor to strike the word "twice" and to insert "larceny or other" before "infamous." *Id.* at 628.   The floor amendment to proposed subsection (c) initially failed by one vote, *id.* at 657, but, on reconsideration, was adopted, *id.* at 727–28, and the bill was enacted in that form.

Consequently, from the effective date of the constitutional amendment in 1972 until July 1, 1974, § 3–4(c) produced the same result as former § 2 of art. 1 of the Constitution in that the statute read: "No person shall be registered as a qualified voter if he has been convicted of larceny or other infamous crime, unless pardoned by the Governor."   Md. Code (1957, 1973 Cum.Supp.), Art. 33, § 3–4(c).

In the 1974 legislative session Senator Blount introduced Senate Bill 57 to amend, *inter alia,* § 3–4(c).   *See* 1974 Md.Sen.J. at 41.   Senate Bill 57 was amended in committee and, as amended, enacted.   *See* 1974 Md.Laws 1353–54.   Set forth below in columns for comparison purposes is § 3–4(c) as introduced and as amended.   The comparison should also be made in light of Md.Code (1957, 1987 Repl.Vol.), Art. 1, § 10 which provides "the singular always includes the plural and vice versa. . . ."   Brackets indicate words deleted from the bill as introduced and underlining indicates words added to the introductory form of the bill.

---

**3.**  Among the amendments to Senate Bill 239 was one adding Senator Clarence W. Blount as a co-sponsor with Senator Curran.   See 1972 Md.Sen.J. at 594.   At the 1970 session of the General Assembly Senator Blount and three other members of the Senate had introduced Senate Bill 241.   Legislative Council of Maryland, *Report to the General Assembly of 1972* at 32.   That proposal was referred to the Legislative Council which recommended that the General Assembly propose the constitutional amendment to former art. 1, § 2 which was ratified in 1972.

| AS INTRODUCED | AS AMENDED |
|---|---|
| No person shall be registered as a qualified voter if he has been convicted [once] of larceny or other infamous crime, unless he has been pardoned, or [unless] he has completed any sentence imposed pursuant to [his] conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence. | No person shall be registered as a qualified voter if he has been convicted of larceny or other infamous crime, unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence imposed pursuant to that conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence. |

The word "once" in the introductory version is ambiguous. "Once" can mean "one time and no more." Webster's Third New International Dictionary 1575 (4th ed.1976). But it can also mean "ever," "at some indefinite time in the past," and "at one time." *Id.* Under the latter meanings the introductory version could have produced endless cycles. If a person were ever convicted of an infamous crime, that person would be reenfranchised upon completion of the sentence. The intent, however, was that the person could be convicted "one time and no more." The amendment removes the ambiguity and cuts off the endless cycles by providing that eligibility to vote is restored upon completion of sentence "in connection with [the person's] first such conviction only[.]"

The State submits that its construction of § 3–4(c) is supported by a comparison of the title of Senate Bill 57 as introduced with the title as enacted, following amendments. Set forth below are both forms of the relevant part of the title. Once again brackets in the introductory form indicate words deleted therefrom by amendment and underlining in the amended version indicates words added to the introductory form as a result of amendment.

| AS INTRODUCED | AS AMENDED |
|---|---|
| For the purpose of providing that [no] person may be registered as a qualified voter if he has been convicted of larceny or other infamous crime [, unless] he has (1) been pardoned or (2) completed any sentence imposed pursuant to his conviction, including periods of parole or probation .... | For the purpose of providing that a person may be registered as a qualified voter if he has been convicted of larceny or other infamous crime only once and he has (1) been pardoned or (2) completed any sentence imposed pursuant to his conviction, including periods of parole or probation .... |

The introductory form of the title of Senate Bill 57 presents the problem of endless cycles of convictions for infamous crimes with reinstatement as a voter following completion of the service of the sentence imposed. The amendment to the title basically inserts the words, "only once," to modify "convicted," while the same series of amendments was removing "once" as a modifier of "convicted" in the body of the statute. Thus the title reinforces our construction, presented above, which views the purpose of the amendment to be to prevent multiple restorations of voting privileges following completion of sentences imposed in a series of convictions for infamous crimes, as contrasted with the purpose being to prevent restoration of voting privileges upon completion of sentence imposed for two or more infamous crimes charged, tried to guilty verdicts and sentenced in one criminal proceeding.

Thus, the legislative purpose of the language relied upon by the State concerns the timing or sequence of convictions and not the interrelationship of charges in a multiple count indictment. The "first such conviction" does not refer to the lowest numbered count charging an infamous crime on which there is a verdict or plea of guilty in an indictment charging multiple infamous crimes. "[F]irst such conviction" is used in the broader, layperson's sense of the occasion of conviction of a person who is a first time offender, as opposed to a repeat offender. If a person who has never previously been convicted of an infamous crime suffers a "first such conviction," the eligibility to re-reg-

ister as a voter arises when the first time infamous crime offender has completed the entire sentence imposed on all proven counts for all crimes of all types on the occasion of that "first such conviction."

Under our construction of § 3–4(c) the General Assembly, in effect, left questions of merger, lenity, the nature of factual interrelationships between counts, and the degree of seriousness of multiple offenses to the sentencing discretion of the trial judge. Under § 3–4(c) no first time offender who has been convicted of one, two or more infamous crimes in the same criminal proceeding can be eligible to vote until that person has served the entire sentence imposed at that proceeding. It is the sentence which reflects those factors when § 3–4(c) is applied.

This construction of § 3–4(c) is hardly absurd, as the State contends. Indeed, it is consistent with a national trend which was in vogue at least at the time when § 3–4(c) was enacted. *See* Note, *Restoring the Ex–Offender's Right to Vote: Background and Developments*, 11 Am.Crim.L. Rev. 721, 755–57 (1973). In *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2665, 41 L.Ed.2d 551, decided June 24, 1974, the Supreme Court sustained against an Equal Protection Clause challenge a provision of the California constitution which disfranchised a person convicted of any infamous crime. Justice Marshall, dissenting, presented the following survey:

"The public purposes asserted to be served by disenfranchisement have been found wanting in many quarters. When this suit was filed, 23 States allowed ex-felons full access to the ballot. Since that time, four more States have joined their ranks. Shortly after lower federal courts sustained New York's and Florida's disenfranchisement provisions, the legislatures repealed those laws. Congress has recently provided for the restoration of felons' voting rights at the end of sentence or parole in the District of Columbia. D.C. Code § 1–1102(7) (1973). The National Conference on Uniform State Laws, the American Law Institute, the National Probation and Pa-

role Association, the National Advisory Commission on Criminal Justice Standards and Goals, the President's Commission on Law Enforcement and the Administration of Justice, the California League of Women Voters, the National Democratic Party, and the Secretary of State of California have all strongly endorsed full suffrage rights for former felons."

*Id.* at 83–85, 94 S.Ct. at 2685–86, 41 L.Ed.2d at 587–89 (footnotes omitted).

The State also argues that federal law should control decision of the issue before us on the authority of *State v. Rappaport*, 211 Md. 523, 128 A.2d 270 (1957). Rappaport had been charged with grand larceny in New York where he pleaded guilty and was placed on probation. Thereafter he voted in Maryland elections and was charged here with violating Md.Code (1951), Art. 33, § 193 under which it was an offense for "any person who shall have been convicted of ... infamous crime, under the laws of this or any other state" to vote at any election in this State. We held that the indictment against Rappaport was correctly dismissed because, applying New York law, there was no conviction in New York. In this case federal law treats each count on which Broadwater was convicted as a separate offense for which a separate sentence can be imposed. *See* 7 U.S.C. § 2024(b) (1982). But that is the beginning of the problem and not its resolution. The problem of multiple charges concerns the effect of "first such conviction only" in § 3–4(c) on eligibility for reinstatement. That is an issue on which Maryland law controls in a context which did not exist in the period of lifelong disfranchisement during which *Rappaport* was decided.

The construction which we adopt is also consistent with the rule favoring liberal construction of remedial statutes. *See State v. Barnes*, 273 Md. 195, 328 A.2d 737 (1974).

Broadwater additionally argues that his construction is necessary in order to avoid a substantial question of denial of equal protection based upon the difference in treatment

between first timers convicted on multiple counts in one trial and first timers convicted on one count in one trial. We do not rest our decision in any way on that rule of construction advocated by Broadwater, and we intimate no opinion on the degree of substantiality of the constitutional argument which Broadwater raised, but which we do not reach.

The State has moved to strike a reply brief filed by Broadwater to the reply brief filed by the State. Part of the material presented in Broadwater's reply brief is justified by Broadwater's "cross-appeal" from the circuit court's holding rejecting Broadwater's constitutional argument. Nevertheless, much of Broadwater's reply brief is directed to the statutory construction issue on which he is undisputably an appellee and on which he was not entitled to a further reply. We shall adjust costs accordingly.

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS, EXCEPT THAT TEN–THIRTEENTHS OF THE COSTS OF THE REPLY BRIEF FOR APPELLEE/CROSS–APPELLANT WILL BE PAID BY THE APPELLEE.